**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WAYNE M. MATTHEWSON,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | NO. EDCV 12-01091 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Wayne M. Matthewson ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI").[1] The parties

---

[1] The Court notes that Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil

consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is AFFIRMED.

## II.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on December 1, 2009 (Administrative Record ("AR") 95, 120-23, 134) and Supplemental Social Security Income on December 8, 2009. (AR 96, 124-27). Plaintiff alleged a disability onset date of January 1, 2008. (AR 120, 124). The Agency denied Plaintiff's applications initially and upon reconsideration. (AR 95-98). A hearing before Administrative Law Judge Charles E. Stevenson (the "ALJ") was held on February 2, 2011. (AR 72-94). The ALJ issued his decision on March 11, 2011 finding that Plaintiff was not entitled to disability benefits. (AR 23-32).

On August 23, 2011 and October 6, 2011, Plaintiff submitted new evidence to the Appeals Council for consideration (AR 530-625), including a Mental Work Restriction Questionnaire dated July 18, 2011 ("Questionnaire") (AR 576-77) and an Evaluation Form for Mental Disorders dated August 15, 2011 ("Evaluation") (AR 578-82), both completed by psychiatrist Dr. Maged Estafan. The Appeals Council declined review on May 11, 2011. (AR 1-6). Plaintiff filed the instant action on July 10, 2012.

---

Procedure, the Court orders that the caption be amended to substitute Carolyn W. Colvin for Michael J. Astrue as the defendant in this action.

**III.**

**FACTUAL BACKGROUND**

Plaintiff is a former construction worker with a high school education. (AR 76). He was forty-years old at the time of his hearing before the ALJ. (AR 75). He has lived with his mother his entire life. (AR 86-87). Plaintiff alleges that he suffers from being Human Immunodeficiency Virus (HIV) positive, as well as a seizure disorder, bipolar disorder, depression, and obsessive-compulsive disorder with a disability onset date of January 1, 2008. (AR 169-71). Plaintiff claims that his impairments preclude him from working and persist despite taking medications. (AR 171, 184, 238-39). Evidence in the record demonstrates that Plaintiff abuses or has abused both methamphetamine and alcohol. (AR 230).

**A.  Plaintiff's Medical History**

A variety of medical professionals have examined Plaintiff between his alleged disability onset date and when he filed for benefits. The Court summarizes Plaintiff's medical history below.

Plaintiff's own treating physician, Dr. Ryan Zane, as recently as December 20, 2009, found that Plaintiff is capable of "light" work. (AR 366). Dr. Zane indicated Plaintiff could stand and walk for two to four hours in a work day and that Plaintiff's ability to sit was unlimited. (Id.). Dr. Zane also indicated Plaintiff's HIV is controlled through

medication. (Id.). Dr. Zane's notes, which detail medical refills and lab results, support these findings. (AR 268-360, 390-467, 494-529).

Dr. Adly Azab,[2] Plaintiff's treating psychiatrist since August 2008, described Plaintiff's sleep and symptomology as "good" as recently as March 2, 2010. (AR 30, 241).

After the ALJ's adverse ruling, Dr. Maged Estafan completed a "Mental Work Restriction Questionnaire" and found Plaintiff moderately limited in several mental work activities, such as "understand[ing] and remember[ing] short and simple instructions," "mak[ing] simple work-related decisions," and "work[ing] in coordination with or in close proximity to other people without being distracted by them." (AR 576-77). Dr. Estafan also noted Plaintiff's continued battle with addiction to methamphetamine. (AR 569).

Non-examining state agency doctors Dr. Albert Lizarraras[3] and Dr. N. Haroun evaluated the medical record. (AR 368-88). Dr. Lizarraras opined that Plaintiff was "doing relatively well with [his] current medication regimen" and that "no opportunistic diseases have been documented," noting that Plaintiff does not appear chronically ill nor fatigued. (AR 387-88). Both doctors referenced Plaintiff's virtually unfettered activities of daily living, such as making simple meals and

---

[2] The ALJ opinion erroneously spells Dr. Azab's first name as "Adiy." (AR 29). The correct spelling is "Adly."

[3] The ALJ decision erroneously spells Dr. Lizarraras's name as "Lizzararas." (AR 29). The correct spelling is "Lizarraras."

using public transportation, in support of their findings that Plaintiff retained the ability to work. (AR 379, 387). Dr. A. Ahmed, another non-examining state agency doctor who reviewed Plaintiff's medical records, also reported that Plaintiff retained the functional ability to work. (AR 468).

**B.   Medical Expert Opinion**

A medical expert testified at the hearing. (AR 84-85). Dr. Arnold Ostrow, Pulmonologist and Internist, testified that the medical record indicates Plaintiff was properly diagnosed in regard to the alleged mental impairments. (Id.). Dr. Ostrow also said Plaintiff's seizures and HIV are well-controlled. (Id.). The doctor further noted that Plaintiff's CDC counts were normal. (AR 85). Dr. Ostrow opined that Plaintiff retained the ability to perform "light" work, with the ability to sit for six of eight hours in a workday; the ability to stand and walk for two of eight hours in a workday; and the occasional ability to bend, crawl, crouch, and kneel. (Id.). Dr. Ostrow further testified that he would also put in a restriction on Plaintiff regarding the use of dangerous equipment. (Id.).

**C.   Lay Witness Testimony**

Terri Lynn Matthewson, Plaintiff's mother, testified that Plaintiff sometimes does household chores, such as taking out the trash and

5

picking up his room. (AR 88).[4] Otherwise, she testified that Plaintiff spends his days sleeping or "on the couch." (AR 87).

**D.   Plaintiff's Testimony**

Plaintiff testified that he washes dishes and vacuums. (AR 83). He testified that if he were asked to do a job of a simple, repetitive task without reading or writing and without having to work with the public, he does not see "why not" he could not do such job. (AR 83).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)); see also 20 C.F.R. § 416.910 ("Substantial gainful activity means work that - (a) involves doing significant and

---

[4] During a July 12, 2010 "Team Meeting" with Plaintiff's mental health providers, Plaintiff's mother stated that he spends his time "watching porn and running up high bills from the cable company." (AR 510). She also said that on one occasion Plaintiff took her deceased husband's car and drove 3,000 miles to "giv[e] [his] friends rides." (Id.). During the meeting, Plaintiff admitted that he has a twenty-year history of substance dependence on methamphetamine. (AR 510). Plaintiff has also indicated that he has no problem with personal care. (AR 150-51). He can prepare his own meals, such as cereal. (AR 152). He reports spending his days watching T.V. and sleeping. (AR 150).

productive physical or mental duties; and (b) is done (or intended) for pay or profit."). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing h[er] past work? If so, the claimant is found not disabled. If not, proceed to step five.
(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

Where there is evidence of a mental impairment that allegedly prevents the claimant from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[5] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir.

---

[5] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment. Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

1998)(citing 20 C.F.R. § 416.920a)(per curiam). First, the ALJ determines the presence or absence of medical findings relevant to the claimant's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, after establishing such findings, the ALJ rates the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the claimant's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

## V.

## THE ALJ'S DECISION

On February 2, 2011, Plaintiff testified at a hearing held before ALJ Charles E. Stevenson. (AR 74-83). Plaintiff's mother testified as a lay witness. (AR 86-90). An impartial vocational expert and medical expert also testified. (AR 90-93).

9

1    The ALJ employed the five-step sequential evaluation process and
2 concluded that Plaintiff retained the RFC to perform a wide range of
3 "light" work. (AR 25-32). At step one, the ALJ found that Plaintiff
4 had not engaged in substantial gainful activity since his alleged
5 disability onset date of January 1, 2008. (AR 25). At step two, the
6 ALJ found that Plaintiff had severe impairments of being HIV positive,
7 as well as a seizure disorder, bipolar disorder, depression, and
8 obsessive-compulsive disorder. (Id.). At step three, the ALJ
9 thoroughly considered those impairments and determined that Plaintiff
10 does not have an impairment or a combination of impairments that meets
11 or medically equals a listing as set forth in 20 C.F.R. Part 404,
12 Subpart P, Appendix 1. (Id.).

14    At the fourth step, the ALJ found that Plaintiff only has mild
15 restriction in activities of daily living, as the record indicates he
16 can attend to his own needs. (AR 26). The ALJ found also that
17 Plaintiff experiences mild to moderate difficulties in social
18 functioning; mild difficulties regarding concentration, persistence, or
19 pace; and no episodes of decompensation of extended duration. (Id.).

21    The ALJ found Plaintiff retains the RFC to perform a wide range of
22 "light" work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b),
23 inclusive of: the ability to lift and carry no more than ten pounds
24 frequently, and twenty pounds occasionally; the ability to sit for six
25 of eight hours, cumulatively, in a workday; the ability to stand and
26 walk for two of eight hours, cumulatively, in a workday; the occasional
27 ability to bend, stoop, crouch, and crawl; no ability to climb ladders;

10

and no ability to work at unprotected heights or around hazardous equipment. (AR 26-27).

The ALJ accorded great weight to the state agency physicians' opinions because they are largely consistent with the medical expert's opinions and the opinions of Plaintiff's own treating physician. (AR 27-30). The ALJ fully credited Dr. Azab's findings that Plaintiff's mental impairments are sufficiently treated with the non-invasive treating modalities of medication optimization and infrequent follow-up appointments. (AR 30).

The ALJ also considered Plaintiff's mother's testimony and Third Party Function Report detailing Plaintiff's abilities to perform a variety of tasks such as chores, cleaning, and more. (AR 27-28). The ALJ notes that Plaintiff's mother indicated Plaintiff searches for work but to date has not found a job. (AR 28). The ALJ then noted that an inability to find a job does not equate to a finding of disability. (Id.). The ALJ further observed in his opinion that no treating, examining, or reviewing physician has opined Plaintiff is totally disabled, nor has any opined that Plaintiff cannot perform work at a "light" level with the ascertained restrictions. (AR 30).

At step four of the analysis, the ALJ considered Plaintiff's past job as a construction worker, which is "very heavy work" according to the vocational expert who testified at the hearing. (AR 30-31, 91). The ALJ determined Plaintiff is unable to perform his past relevant work. (AR 30-31).

11

At step five, the ALJ considered whether Plaintiff could perform any other work. (AR 31). Considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national and local economy that Plaintiff can perform. 20 C.F.R. §§ 404.1569, 416.969. (AR 31). Plaintiff was thirty-seven years old at the onset of the alleged disability, which makes him a "younger individual age 18-49." 20 C.F.R. §§ 404.1563, 416.963. (AR 31). Plaintiff has a high school education and can communicate in English. 20 C.F.R. §§ 404.1564, 416.964. Transferability of job skills is not an issue in this case, because Plaintiff's past relevant work as a construction worker is characterized as "unskilled." 20 C.F.R. §§ 404.1568, 416.968. (AR 91). Considering all of the above, jobs exist in significant numbers at this level of "light" work, even after taking into account Plaintiff's additional limitations. (AR 31, 91). Plaintiff's RFC also allows him to work at all exertional levels below his own, which includes the "sedentary" world of work. (Id.). The ALJ concluded that Plaintiff was not entitled to disability benefits. (AR 32).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.

Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

The ALJ's decision denying benefits will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)(citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).  In reviewing the Commissioner's decision, the court may not substitute its judgment for that of the Commissioner.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

## VII.
## DISCUSSION

Plaintiff contends that the ALJ committed error for two reasons.  First, Plaintiff alleges that the ALJ improperly rejected the treating physicians' opinions.  (Mem. in Supp. of Pl.'s Comp. at 3-9).  Second, Plaintiff alleges that "where the ALJ finds the presence of severe

13

mental impairments and the medical evidence demonstrates the presence of severe mental impairments, the ALJ errs in failing to find [severe] mental limitations as a result of the severe mental impairments." (Id. at 9).  The Court finds that Plaintiff's claims lack merit.  For the reasons discussed below, the ALJ's decision should be AFFIRMED.

**A.    The ALJ Properly Considered The Treating Physicians' Opinions**

Plaintiff contends that the ALJ did not give sufficient weight to the treating opinions. (Mem. In Supp. Of Pl.'s Comp. at 3-9).  However, the treating physicians' opinions support Plaintiff's RFC and the ALJ properly considered them.

Dr. Ryan Zane, Plaintiff's treating doctor, found Plaintiff to be capable of two to four hours of standing and walking in a work day and for Plaintiff's ability to sit to be unlimited. (AR 366).  Dr. Zane's findings alone would support a finding of an RFC to perform "light" work. (Id.).  The ALJ found Plaintiff to be capable of even less; the ALJ reduced Plaintiff's ability to stand and walk to two hours and augmented the RFC to include postural limits and environmental restrictions. (AR 26-27).  The ALJ's finding is in fact more lenient than Dr. Zane's conclusions.

Furthermore, the ALJ points out that no physician has opined Plaintiff is disabled. (AR 30).  For example, Dr. Azab, a treating psychiatrist, indicated that Plaintiff's sleep and symptomology are "good." (AR 30, 241).  Such findings support the ALJ's decision and

14

undermine Plaintiff's argument that the ALJ did not adequately give weight to treating opinions.

Plaintiff further argues that the vocational expert's testimony was that Plaintiff's limitations would "preclude all work activity." (Mem. In Supp. Of Pl.'s Comp. at 5). However, the testimony that Plaintiff cites was in response to a more restrictive hypothetical combining Plaintiff's RFC with Plaintiff's fatigue as subjectively alleged. (AR 93). In response to the hypothetical finding the Plaintiff to be able to perform light work, the VE found numerous positions locally and nationally. (AR 92). The testimony supports the ALJ's decision.

**B.   Dr. Estafan's Opinion Is Against The Weight Of The Record**

In arguing that the ALJ did not adequately take the treating physicians' opinions into account, Plaintiff frequently cites medical records by Dr. Maged Estafan. (Mem. In Supp. Of Pl.'s Comp. at 3, 5-6). However, Dr. Estafan's opinions merit little consideration because they are against the weight of the record.

Dr. Estafan's opinions merit less weight because medical reports solicited and produced after an adverse ALJ decision are "less persuasive" than those presented to the ALJ for consideration. Macri, 93 F.3d at 544; see also Clem v. Sullivan, 894 F.2d 328, 332-33 (9th Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting Allen v. Sec'y of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984) (rejecting evidence first submitted to the district

court because claimant "sought out a new expert witness who might better support his position"))).  Plaintiff submitted the medical records from Dr. Estafan after the ALJ issued a decision adverse to Plaintiff.  (AR 20, 577, 582).  Therefore, the new evidence is accorded less weight.

Even if Dr. Estafan's treating records had been available at the time of the ALJ's decision, they would not be accorded significant weight because of the extremely limited duration of the treating relationship between Dr. Estafan and Plaintiff.  A doctor's medical opinions about a patient are considered less reliable where the doctor has had limited interactions with the patient.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (upholding the ALJ's rejection of the opinion of a treating physician who had administered two psychiatric examinations because the doctor had "not had any previous interaction with the claimant" and "was in poor position to assess the claimant's statements").  Dr. Estafan was Plaintiff's doctor for a very brief period (AR 567-569, three visits) before preparing his responses to both the Questionnaire (AR 576-78) and the Evaluation (AR 579-82).  If Dr. Estafan's records had been submitted to the ALJ before his decision, the ALJ would still have given more weight to other treating physicians opinions because they had spent more time with Plaintiff, such as Dr. Azab and Dr. Myong-Won Kim.[6]

---

[6] Defendant correctly points out that the ALJ opinion refers to Dr. Kim's observations but erroneously accredits them to Dr. Azab, and that therefore, "in crediting Dr. Azab, the ALJ in fact also credits Dr. Kim (AR 29-30)."  (Mem. In Supp. Of Def.'s. Answer 8-9, n.6).  The Court notes that upon review of the record, the ALJ erroneously attributes Dr. Kim's medical reports to Dr. Azab.

16

Dr. Estafan's opinions merit less weight also because of the lack of evidence supporting them. Notably, the doctor's own treatment notes do not support his conclusion. Finding that a treating physician's opinions "[do] not mesh" with his or her objective data or history provides legitimate reason for rejecting such opinions. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). See also Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990) (finding that the Appeals Council did not err in rejecting the opinion of a doctor who saw claimant months after the ALJ's adverse decision where the opinion was not consistent with medical evidence); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming rejection of treating physician's opinion where "it was unsupported by rational or treatment notes, and offered no objective medical findings to support the existence of [claimant's] alleged conditions"; Turner, 613 F.3d at 1223 (affirming the ALJ's rejection of a treating physician's opinion where the doctor "assumed from the outset, without offering his own diagnosis, that [claimant] suffered from post-traumatic stress disorder" and "made no attempt to cite" objective findings to substantiate his assessment). Dr. Estafan's notes about Plaintiff's sleeping a lot, lacking motivation, and struggling to overcome his drug habit (AR 567-69) do necessarily support the final conclusion in the doctor's Questionnaire and Evaluation that Plaintiff has mood swings or manic episodes, both of which the doctor identified as Plaintiff's impairments. (AR 576, 579). Thus, even if Dr. Estafan's opinions had been before the ALJ, the doctor's conclusions would not have changed the ALJ's decision.

17

Dr. Estafan's treating notes not only fail in serving as adequate evidence for the doctor's conclusions but actually support the ALJ's finding that Plaintiff's problems are self-perpetuating rather than linked to a mental impairment.  Dr. Estafan noted Plaintiff had "no zest to look for a job" and that Plaintiff battled with his addiction to methamphetamine.  (AR 568-69).  These notes support the ALJ's finding that Plaintiff was simply unable to find work as opposed to disabled, and that Plaintiff's addiction to methamphetamine was likely the reason Plaintiff was unable to show up for jobs in the past.  (AR 28).  See Macri, 93 F.3d at 544 ("[T]he ALJ is entitled to draw inferences 'logically flowing from the evidence'") (citations omitted).  Dr. Estafan's treating notes support the ALJ's findings and therefore would not change the outcome, even if the ALJ considered them now.  Remand is not required.

## C.   **The ALJ Properly Assessed Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ committed reversible error by finding a severe mental impairment at step two but not finding more severe mental limitations as part of the RFC.  (Mem. In Supp. Of Pl.'s Comp. at 9-13).  However, in Maher v. Comm'r of Soc. Sec. Admin., the court held that finding that a claimant has a severe mental impairment at step two of the sequential analysis did not necessarily compel the inclusion of severe mental limitations in the residual functional capacity determination.  Maher v. Comm'r of Soc. Sec. Admin., 2012 WL 2860751, at**1 (9th Cir. July 12, 2012).  Plaintiff imparts too much significance to the step two determination, when in fact the step two

18

determination is "merely a threshold determination" and not dispositive of the remaining steps of the evaluation. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

Furthermore, the ALJ did perform the mental limitation analysis and indicates in his decision that the RFC determination reflects the degree of limitation supported by the evidence. (AR 26). The ALJ found that Plaintiff only has "mild restriction" in activities of daily living, experiences "mild to moderate" difficulties in social functions, and only "mild difficulties" in concentration, persistence, and pace. (Id.). The ALJ further noted that Plaintiff can "make plans, perform actions, and the like, when he elects to act responsibly." (Id.). The ALJ also found that Plaintiff has not experienced extended episodes of decompensation. (Id.). Substantial evidence, in the form of the state agency doctors' evaluations (AR 376-380, finding no functional limitations), support these findings. The ALJ provided specific and legitimate reasons to reject the more restrictive mental limitations described by Dr. Estefan, as discussed in Section B, above. No remand is required.

\\
\\
\\
\\
\\
\\
\\
\\

19

# VIII.

# CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 10, 2013.

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[7] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."